UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| FELIX VEIGA, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV412-266 |
| | ) | CR411-003 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Felix Veiga, who pled guilty to possession of stolen credit card numbers with the intent to defraud, moves for 28 U.S.C. § 2255 relief. (Doc. 1.[1]) The government opposes. (Doc. 4.[2]) For the following reasons, his motion should be **DENIED**.

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV412-266. "Cr. doc." refers to documents filed under movant's criminal case, CR411-003.

[2] The undersigned notes that there was a collateral attack waiver in the plea agreement which would have acted to bar many of his claims. (Cr. doc. 81 at 3.) The government stipulates, however, that neither the district court nor prosecutor discussed the matter during Veiga's change of plea hearing. (Doc. 4 at 8 n. 2.) Hence, it chooses not to "argue that the collateral attack waiver in Veiga's plea agreement bars his claims." (*Id.*)

I. **BACKGROUND**

Veiga, along with two others, was caught red-handed using stolen credit cards to purchase gift and phone cards in the Hinesville, Georgia Wal-Mart after the management had been tipped off to similar events which had occurred at the Jesup, Georgia Wal-Mart just hours before. (Presentence Investigation Report ("PSI") at 3 ¶¶ 4-6.) The operation was somewhat sophisticated. Veiga and his co-conspirators used manufactured credit cards that had their respective names on them but the magnetic strips contained someone else's account information. (*Id.* at 4 ¶ 7.) When authorities searched the van Veiga had been using, they discovered laptop computers and other equipment used for committing forgery, including laptops and numerous counterfeit credit cards. (*Id.* ¶ 8.) In total, they had 234 counterfeit credit cards, the account numbers for 162 more, and gift and phone cards totaling $5,118.78. (*Id.*)

On January 4, 2011, a federal grand jury returned a one-count indictment against Veiga, charging him with possession of fifteen or more stolen credit card numbers with intent to defraud. (Cr. doc. 1.)

While he initially pled not guilty, he changed his plea on April 13, 2011. (Cr. doc. 59.) He was sentenced to 48 months' imprisonment, which is twice the applicable guideline range. (Cr. doc. 78.) The Eleventh Circuit Court of Appeals, however, found his sentence to be both substantively and procedurally reasonable when it affirmed the district judge's sentence. *United States v. Veiga*, 458 F. App'x 820 (11th Cir. 2012). Thereafter, Veiga filed the instant motion, claiming that his retained attorney, Alex Zipperer, was ineffective.

## II. STANDARD OF REVIEW

On ineffective assistance of counsel claims the Court applies *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which created a two-part test for determining whether counsel performed ineffectively. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, the defective performance must have prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

3

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, Veiga must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

For the prejudice prong Veiga must show that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

## III. ANALYSIS

Veiga raises two distinct groups of ineffectiveness claims, asserting that Zipperer was ineffective both in relation to the entry of his guilty plea and at sentencing.[3]

---

[3] Veiga raises three other claims that can be swept aside without much analysis. First, he contends that his attorney was ineffective "at trial" by standing silent due to his belief that his client should be convicted. (Doc. 2 at 12.) It is unclear what he means by this, since he pled guilty and never had a trial. And his lawyer's belief as to his guilt seems to be borne out by the fact that he was caught red-handed and in fact *did* plead guilty to the charges (more on this in text). In any event, this claim is conclusory and vague, and it is thus without merit. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991) (no hearing required where movant's allegations fail to satisfy the prejudice prong of *Strickland's* ineffective assistance of counsel test); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

Next, Veiga claims that counsel was ineffective for failing to raise his own trial ineffectiveness on appeal. (Doc. 2 at 4.) He states it was "ridiculous" for counsel to raise arguments attacking the above-the-guideline sentence as an abuse of discretion, when the only real claim was that he had rendered ineffective assistance. (*Id.* (note, however, that he argues later in his brief that the guidelines departure was "a clear abuse of discretion").) As a general rule, however, the Eleventh Circuit will not address ineffectiveness claims on appeal. *United States v. Merrill*, 513 F.3d 1296, 1308 (11th Cir. 2008). A motion under 28 U.S.C. § 2255 is the preferred procedure for challenging counsel's effectiveness. Moreover, counsel could hardly operate

5

## A. Plea Claims

Veiga contends that his guilty plea was not voluntary due to ineffectiveness of counsel in various ways throughout the plea negotiations and execution of the plea agreement. (Doc. 2 at 2-6.) According to Veiga, Zipperer coerced him into signing the plea agreement using "terrifying arguments that he would receive a sentence of 10 to 15 years if he decided to go to trial."[4] (Doc. 2 at 2.) He also claims that Zipperer forced him to sign the agreement without allowing him to read or see it, concealed the "true undertone" of the agreement, prevented him from participating in the plea negotiations in any meaningful sense, and

---

effectively if forced to raise his own ineffectiveness. It would amount to a manufactured conflict of interest. Regardless, Veiga's ineffectiveness claims are entirely without merit, which means Zipperer was not ineffective for failing to raise them during the appellate proceedings.

Finally, movant claims that counsel was ineffective for failing to raise a claim under *Miranda v. Arizona*, 384 U.S. 436 (1966), prior to entering his guilty plea. (Doc. 2 at 14.) That claim was waived by his guilty plea. Generally, when a defendant pleads guilty, he waives all non-jurisdictional challenges to a conviction. *United States v. Smith*, 532 F.3d 1125, 1127 (11th Cir. 2008). Pre-plea constitutional challenges may attack only the plea itself by showing that the advice he received from his attorney undermined "the voluntary and intelligent character of the plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); Hill v. Lockhart, 474 U.S. 52, 59 (1985).

[4] This is despite the fact that the maximum statutory sentence was 10 years, and the recommended guideline range was likely to be 18-24 months. (PSI ¶ 48); 18 U.S.C. § 1029(c)(1)(A)(i).

tricked him based on a false promise that he could only receive a sentence of 18 to 24 months if he went along with the plea. (Doc. 2 at 2-6.) These claims, however, are directly contradicted by Veiga's sworn testimony to the Court during his change of plea hearing.

At that hearing, Veiga, with the aid of a translator (cr. doc. 103 at 5), testified that he was under no compulsion to plead guilty by the codefendants or anyone else. (*Id.* at 47-48.) He insisted that he was pleading guilty because he was in fact guilty. (*Id.* at 48, 50.) He confirmed that he understood the terms of the plea agreement. (*Id.* at 47.) Veiga affirmed the Court's statement that he "has had the services of a competent lawyer selected by him. And his lawyer has done all of those things that are called for to adequately serve his client's legal needs, and has gone above and beyond, and they have reviewed the indictment. The defendant authorized plea negotiations that resulted in the written plea agreement. And they have discussed the Federal Sentencing Guidelines, and the defendant is satisfied with his lawyer." (*Id.* at 54.) The Court also informed him that despite the pre-sentencing guidelines estimates Zipperer gave him, there was no way to know "what sentence,

exact sentence that the Court will impose." (*Id.* at 43.) He might receive a "greater or lesser term" than the guidelines range. (*Id.* at 41.) Veiga affirmed that he understood this but still wished to plead guilty. (*Id.* at 43.)

Simply put, Veiga's "solemn declarations" before the district judge that he was familiar with the plea agreement, understood that the guidelines range was not binding, and understood all of the rights he waived "carr[ies] a strong presumption of verity" and rightly constitutes a "formidable barrier" to overcome in these collateral proceedings. *Cross v. United States*, 2009 WL 211418 at * 8 (S.D. Ga. Jan. 27, 2009) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Nothing Veiga has offered comes close to overcoming that barrier. Hence, this cluster of claims fails.[5]

---

[5] In his "traverse," he also suggests that Zipperer rendered deficient performance by failing to advise him of the immigration consequences of his plea (doc. 5 at 6), but the Court explicitly advised him of this possibility prior to accepting Veiga's plea. (Cr. doc. 103 at 41 ("And it could result in deportation; that is, you would lose your legal status in the United States.").) As such, even if counsel performed deficiently by failing to advise him of the potential for deportation, he has not shown any resulting prejudice, and his claim still fails. *See United States v. Wilson*, 245 F. App'x 10, 11-12 (11th Cir. 2007) (even if counsel was deficient in advising defendant of possible sentencing implications of guilty plea, defendant could not establish prejudice where the district court cured any error by explaining the consequences in detail before accepting the plea); *see also United States v. Perez*, 2010 WL 4643033 at *2-3 (D.

## B. Sentencing Claims

Next, Veiga claims that Zipperer erred at sentencing by failing to secure him "safety valve" treatment under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, failing to argue for a mitigated role reduction, failing to seek a downward departure, failing to argue that his sentence was unfairly increased due to his gender and legal status in the United States (he is Cuban, but came to the United States legally under a special regulation that applies to Cuban citizens who have relatives living here), failing to point out a sentencing disparity between him and co-defendant Marcia Alarcon, and failing to argue that the government breached the plea agreement at sentencing.

His "safety valve" claim (doc. 2 at 15-17) is a nonstarter, as "safety valve" treatment, which limits the applicability of statutory minimums,

---

Neb. Nov. 9, 2010) (the court is not convinced the defendant could establish prejudice where two prior charges would likely be reinstated and defendant could well be subject to deportation without the federal conviction at issue); *Amreya v. United States*, 2010 WL 4629996 at *5 (N.D. Tex. Nov. 8, 2010) (movant failed to show prejudice where the trial court advised him of the possibility of deportation as the result of his plea and he testified he understood that consequence); *Brown v. United States*, 2010 WL 5313546 at *5-6 (E.D.N.Y. Dec. 17, 2010) (same).

only applies in controlled substances cases.[6] 18 U.S.C. § 3553(f); U.S.S.C. § 5C1.2. Moreover, it allows a judge to impose a sentence below the mandatory minimum, and here *there was no mandatory minimum*. 18 U.S.C. § 1029(a)(3) & (c). As for the minor role adjustment, Veiga has failed to allege any facts in support. (Doc. 2 at 15-16.) It is his burden to show that his attorney rendered deficient performance by failing to prove by a preponderance of the evidence that he played a minor role in comparison with the other participants in the crime. U.S.S.G. § 3B1.2; *United States v. Rodriguez de Varon*, 175 F.3d 930, 939 (11th Cir. 1999) (en banc). As he has failed to support his claim with any facts suggesting that he played a minor part in the offenses, the claim that his attorney was deficient for failing to raise such facts is conclusory and due to be denied under *Tejada*, 941 F.2d at 1559. In any event, the record and his plea admissions show that he was a *full participant* in the fraud. He completed 13 fraudulent transactions using fake credit cards bearing his own name. (PSI ¶ 6.) None of his arguments to the contrary (e.g., he's

---

[6] He concedes as much in his "traverse" to the government's response. (Doc. 5 at 4.)

no "expert" in such activities based on his clumsy execution of the crime,[7] had no "criminal career," and this was all just "crazy occasional conduct" (doc. 2 at 6,10-11)) support his claim that he only played a minor role.

Next, Veiga claims that his attorney was ineffective for failing to secure a downward departure pursuant to U.S.S.G. § 5K2.0 or 5K2.11. (Doc. 2 at 5, 16.) Section 5K2.0 applies only where there exist mitigating circumstances not adequately taken into consideration by the recommended guidelines sentence. Section 5K2.11 is simply a policy statement that defendants who committed a crime to avoid a perceived greater harm may be worthy of a reduced sentence. Examples include mercy killings, the possession of a machine gun by an ex-soldier as a military trophy, or a school teacher's possession of controlled substances to use as a display in a drug education program. Needless to say, Veiga has not shown any circumstances in *this* case suggesting that his theft by fraud was in service of some social good. Nor has he shown *any*

---

[7] He states that he completed thirteen transactions at a self-checkout lane at Walmart using different credit cards. (Doc. 2 at 11.) According to him, this shows that he "is not an expert in frauds but simply crazy." (*Id.*) His poor execution of the crime did not make him a minor participant; it just made him an incompetent criminal, which is hardly uncommon, and certainly *not* a defense of any kind.

mitigating circumstances not already taken into account by the guidelines. While he insists that he cooperated with investigating agents, he already benefited from that in obtaining a three-level offense reduction for acceptance of responsibility.[8] (PSI ¶¶ 14-15, 24.) And he has not offered any facts suggesting that his cooperation was so extraordinary that he was due a greater departure under § 5K2. Accordingly, counsel did not render deficient performance by failing to move for a downward departure.

Next, Veiga claims that counsel should have argued that his sentence was unfairly enhanced due to his "gender and status" in the United States as a resident alien. (Doc. 2 at 19.) When the Court entered its sentence, it never mentioned Veiga's gender, and it only briefly discussed his immigration status. (Cr. doc. 86 at 16-21.) His attorney did all he could to assure the Court that Veiga was here legally. (Doc. 86

---

[8] His "cooperation" amounted to admitting that he committed the crime charged. He signed a statement stating that he "went to the Walmart in Hinesville, Georgia, and used several counterfeit credit cards to make purchases. At that time, I had in my possession more than 15 of these counterfeit credit cards. I knew that I was not authorized to use those cards or to make any charges on those accounts." (Doc. 2 at 5.) Admitting that he committed the crime is a far cry from the kind of special assistance required to garner special consideration.

at 11-13.) Regardless, nothing in the record suggests that Veiga was sentenced unfairly based upon his gender or immigration status, nor has he offered any facts suggesting as much. His claim that Zipperer should have done things differently in respect to these two factors is conclusory and thus fails.

Veiga also contends that Zipperer should have raised a claim at sentencing that his sentence was unfairly disparate with that of his co-defendant, Marcia Alarcon. (Doc. 2 at 4, 9.) Alarcon, however, was not sentenced until the following month, so there is no way Zipperer could have known at Veiga's sentencing that they were not the same. Nor could Zipperer have won such a claim on appeal, as it is an indispensable prerequisite that the co-defendant stood similarly situated to him. *United States v. DoCampo*, 573 F.3d 1091, 1101-02 (11th Cir. 2009). Alarcon claimed that she served primarily as an interpreter for her boyfriend, and she faced additional charges in Florida. (Doc. 104 at 7-8.) Veiga faced no consecutive sentence, and he clearly acted as more than an interpreter. Hence, Zipperer did not render deficient performance by failing to pursue this claim.

Finally, Veiga claims that Zipperer rendered deficient performance by failing to argue that the government breached the plea agreement.[9] (Doc. 2 at 4, 9.) Specifically, he claims that the government promised not to oppose the PSI's sentencing recommendation. (*Id.* at 4.)

The government promised that it would "support a recommendation from the probation officer that the defendant receive a 3 level reduction for acceptance of responsibility," "[n]ot seek to add additional federal criminal charges" in this District, and "[m]ake[] a good faith recommendation that the total relevant conduct" involved "396 fraudulent credit cards and credit card numbers." (Cr. doc. 81 at 2.) It never promised to advocate for the probation officer's sentencing recommendation. And the government never argued against the

---

[9] He also claims that the Court violated the plea agreement. The Court, however, was not a party to Veiga's plea agreement. *See United States v. Copeland*, 2013 WL 2321708 at *4 (11th Cir. May 29, 2013) (breach is between the defendant and the government, not the defendant and the court). Nor was it bound by the plea agreement in reaching his sentencing determination. *See* Fed. R. Crim. P. 11(c)(3)(B) (in naked pleas where government merely recommends a course of action to the Court, the Court must inform defendant that he has no right to withdraw the plea if it decides not to grant the government's requests).

Similarly, Veiga argues in his "traverse" that Zipperer performed deficiently by failing to negotiate a binding plea agreement under Rule 11. (Doc. 5 at 3-4.) He presents no facts suggesting that the government or Court would have agreed to such an agreement, and, in fact, it has long been the practice of this Court to reject them.

guidelines sentencing range. (Cr. doc. 84.) In fact, the government requested a "sentence of 24 months." (*Id.* at 16.) Moreover, Zipperer did all he could to argue that Veiga's crime was not unusual and that a guidelines sentence was appropriate. He insisted that Veiga was simply a "cog in the wheel that enables this kind of thing to go on." (*Id.* at 15.) The government agreed. (*Id.* at 16.) Nevertheless, the sentencing judge, prior to imposing the 48-month sentence, stated:

> I think in this case the guidelines are way out of order with what I see here as a major fraudulent scheme, an abundance, a truckload, or a significant amount of cards, fraudulent means of obtaining others. It is a cancer. We rely on credit. And it is bad enough when we grow our own, but to have someone within two years of entering this country amassing all of these means of stealing is most upsetting.

(*Id.* at 13.) As explained above, the appellate court found the sentence to be both substantively and procedurally reasonable. *Veiga*, 458 F. App'x at 822. Zipperer can hardly be faulted for his performance at sentencing, especially as to a non-existent breach by the government.

## IV. CONCLUSION

For the foregoing reasons, Veiga's § 2255 motion (doc. 1) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards,

which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this <u>25th</u> day of September, 2013.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA
